**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| C.A., a minor by his parents and next friends, J.A. and S.A., <br><br> and <br><br> J.A. and S.A., in their own right and on behalf of their daughter, C.A. <br><br>　　　　Plaintiffs, <br><br>　　　　v. <br><br> THOMAS W. TAYLOR (officially as), Superintendent Montgomery County Public Schools, 850 Hungerford Drive, Rockville, Maryland 20850, <br><br> and <br><br> MONTGOMERY COUNTY BOARD OF EDUCATION, 850 Hungerford Drive, Rockville, Maryland 20850, <br><br>　　　　Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1.　　　This is an action brought by C.A. and his parents, J.A. and S.A., ("the parents"),

in their own right and on behalf of their son, alleging that Montgomery County Public Schools

("MCPS"), failed to provide C.A with the Free Appropriate Public Education ("FAPE"), to

which he is entitled under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*  In addition, the Administrative Law Judge ("ALJ"), in this action compounded the violation by ignoring evidence presented at the due process hearing and ultimately failing to properly apply the law and its Due Process protections.  Accordingly, the ALJ denied the parents their requested relief of funding and placement at the Katherine Thomas School.  The Court should correct these errors and reverse the ALJ's Decision, thereby awarding the parents their long-overdue relief.

## Jurisdiction

2.      This Court has jurisdiction pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  This Court has pendent jurisdiction pursuant to MD. CODE ANN. EDUC. § 8-413.  Plaintiffs have exhausted their administrative remedies and appeal from a Decision of an Administrative Law Judge of the Maryland Office of Administrative Hearings, MSDE-MONT-OT-25-21715 (February 3, 2025).

## Parties

3.      C.A. is a twelve-year-old, educationally disabled student who resides in Montgomery County, Maryland.  His parents, J.A. and S.A., bring this action on C.A.'s behalf and in their own right.

4.      Thomas W. Taylor is the Superintendent of the Montgomery County Public Schools ("MCPS" or "the school system"), and as such, is the public official responsible for ensuring that MCPS complies with federal law as to the education of disabled children.  He is sued in his official capacity.

5.      The Montgomery County Board of Education receives financial assistance from the United States Department of Education. Under the IDEA, the Montgomery County Board of Education is responsible for complying with the IDEA with respect to the provision of a FAPE to each disabled child in Montgomery County.

## Factual Allegations

6.      C.A. is a sweet, friendly, and inquisitive student with a history of developmental delays.  At three, he qualified for special education services under the classification of a Speech and Language Impairment through his local school district in Palo Alto, California.

7.      In September 2016, C.A. was formally diagnosed with Autism.  His parents noted that he struggled with anxiety regarding the unknown, social expectations, and had difficulty maintaining focus.

8.      From an early age, C.A.'s anxiety presented itself with challenging behaviors at school such as yelling, pounding, and throwing things, which were most pronounced in larger learning environments and during unstructured times like lunch and recess.  When overwhelmed and anxious, C.A. would become dysregulated, which could lead to the challenging behaviors.

9.      During his third and fourth grade years in Palo Alto, C.A. received the support of a one-to-one aide as part of his special education program.

10.     During fourth grade of the 2023-24 school year, C.A. experienced increased emotional and behavioral dysregulation, which observers explained was likely the result of C.A. being overwhelmed in the classroom and having difficulty accessing the curriculum.

11.     In the summer of 2024, C.A. and his parents relocated to Bethesda, Maryland and contacted MCPS to begin the IEP process.  The parents met with his home school IEP team from Ashburton Elementary in August 2024.  That team agreed to complete his triennial evaluations

and to refer C.A.'s case to Central IEP team ("CIEP") for consideration of a more restrictive placement given his history of significant academic and behavioral needs.

12. For his "Day 1 services," and while the team was waiting for the CIEP meeting to be held, C.A. was placed in the Learning Center at Burning Tree Elementary ("Burning Tree" or "learning center") for the start of the 2024-2025 school year. The learning center provided C.A. with self-contained specialized instruction in reading, writing, math, science, social studies and specials, but was never considered by MCPS to be able to provide C.A. with a FAPE.  C.A. was in the general education setting for lunch and recess.

13. In August 2024, Amy Mounce at the Weinfeld Education Group completed academic testing on C.A.  The testing revealed a range in C.A.'s performance from average in areas of reading to below expectation in other areas of reading, math, and written language.  Ms. Mounce recommended that C.A. receive an evidence-based intervention in reading and direct, explicit instruction in written language and math.  Ms. Mounce also noted that C.A. demonstrated difficulty with flexibility and maintaining attention and emotional regulation; she recommended that he receive direct instruction to address these weaknesses.

14. C.A. adjusted well to the Learning Center and his teacher did not report any concerns regarding dysregulation.  His parents attributed his social/emotional progress during fifth grade to the small, highly supportive, and predictable learning center program with 10 other children.

15. C.A. did not make meaningful academic progress during his time at Burning Tree.

16. During the 2024-2025 school year, C.A. was receiving private Applied Behavioral Analysis ("ABA") services from Esther Werner.  Ms. Werner supported C.A.'s social

and emotional development, as well as his executive functioning skills.  Because homework was a nonpreferred task, she often worked on homework assignments with C.A.

17.     In September 2024, MCPS completed an Educational Assessment, a Speech and Language Assessment, and a classroom observation of C.A.

18.     On the Educational Assessment, C.A. scored in the low average to average range on reading tests; the very low to low average range on math tests; and low to average range on written language measures.  C.A.'s teacher reported that he would rush through his work and, "most of the time he is guessing and it appears he isn't really paying attention."

19.     The IEP team met on November 18, 2024 and amended C.A.'s IEP.

20.     Over two months after making its decision, on December 5, 2025, MCPS formally referred C.A. to the Central IEP team ("CIEP") for consideration of a more restrictive placement.

21.     In January 2025, C.A.'s parents were set to meet with the CIEP team, but MCPS still had not completed a Psychological assessment.  Because of that, the parents opted to postpone the CIEP meeting in order to seek out a private assessment, understanding the school system would follow through on its commitment to refer the case to CIEP once the assessment was completed.

22.     Throughout the 2024-25 school year, the parents worked with Rich Weinfeld, a special education consultant, who assisted them with decisions related to C.A.'s educational programming and placement.

23.     At some point during the 2024-25 school year, C.A. transitioned into the mainstream setting for specials and then science and social studies.  He received support from a paraeducator in science and social studies.

24.    Mr. Weinfeld observed C.A. at Burning Tree multiple times during the 2024-25 school year.

25.    On January 10, 2025, Mr. Weinfeld observed C.A. in his general education media class. Mr. Weinfeld noted that C.A. had difficulty following the classroom rules and had very minimal interaction with his peers. Mr. Weinfeld observed that C.A. did not participate in the academic expectations of the class and instead just looked around the classroom.

26.    On February 20, 2025, Mr. Weinfeld observed C.A. in his general education science and social studies classes at Burning Tree. While he noted that C.A. was able to remain in the general education setting without getting overwhelmed, he also noticed several challenges. Most concerning was his observation of C.A.'s paraeducator using a "tremendous" amount of prompting with C.A. Mr. Weinfeld ultimately concluded that C.A. was relying entirely on his paraeducator, not participating in the class, and not accessing the curriculum.

27.    Mr. Weinfeld concluded that the general education setting, even with support, was not an appropriate placement for C.A.

28.    In March 2025, C.A. was evaluated by Dr. Maguire Brinkley at the Center for Assessment and Treatment. The results of the psychoeducational evaluation reconfirmed his previous diagnoses of Autism and ADHD, as he continued to have significant challenges with social cognition and awareness, peer interaction, attention, impulsivity, and executive functioning.

29.    In her assessment of C.A., Dr. Brinkley found that when provided with adequate supports, C.A.'s overall cognitive abilities fell in the Low Average range. However, academic testing indicated that he was performing below grade level in all areas, with a particular weakness in math. C.A. also self-reported overall anxiety including separation anxiety, phobias

and fears, obsessive thoughts, and physical symptoms such as panic and restlessness, warranting an additional diagnosis of an Unspecified Anxiety Disorder.

30.     Dr. Brinkley provided a comprehensive list of recommendations and classroom accommodation, and recommended placement in a full-time, specialized educational setting with high levels of support.  She further recommended placement for C.A. in a small, highly-structured, supportive classroom with frequent opportunities for one-to-one educational instruction.

31.     Dr. Brinkley also recommended that C.A. attend a classroom that could appropriately program for his inattention and impulsivity, as well as his executive functioning weaknesses in the areas of flexibility, organization and planning, self-monitoring, impulsivity, and emotional control.

32.     C.A's parents submitted Dr, Brinkley's report to the IEP team, along with Mr. Weinfeld's observation reports.

33.     On April 9, 2025, MCPS completed a formal review of Dr. Brinley's report via the Team Consideration of External Report.  As part of the review, the MCPS school psychologist stated that C.A. is able to answer exit tickets in the general education setting without prompting, which was inconsistent with the parents and Mr. Weinfeld's understanding of C.A.'s participation in the general education setting.  As Mr. Weinfeld observed, C.A. required significant prompting from his teachers and paraeducators in the general education classroom.

34.     In the review of Dr. Brinkley's report, the MCPS psychologist also reported concern among the team about Dr. Brinkley not establishing the rapport that would be necessary to assess C.A.  This was inconsistent with Dr. Brinkley's statement in her report that, "rapport was easily established."

7

35.     The MCPS school psychological also failed to read the part of Dr. Brinkley's report in which C.A.'s learning center teacher rated him as "elevated" in the area of Learning Problems, indicating, that C.A. "almost always performs poorly on school assignments and has trouble keeping up in class."

36.     On April 29, 2025, an IEP meeting was convened with the parents and the Burning Tree IEP team.  Dr. Brinkley attended and spoke to the results of her assessment.

37.     The IEP team revised and updated the IEP goals and objectives, supplementary aids and services, and instructional testing accommodations.

38.     At the IEP meeting, Mr. Weinfeld and C.A.'s parents requested that the CIEP meeting now be scheduled consistent with their prior discussions with the IEP team and based on C.A.'s current levels of performance and ongoing needs, as well as Dr. Brinkley's new recommendations.  However, the Burning Tree team refused to refer C.A.'s case to the CIEP team, stating that the data indicated C.A. had made progress and that his IEP could be implemented in the Autism Resource Services program ("ARS"), at North Bethesda Middle School for the upcoming school year.

39.     The final April 2025 IEP proposal provided C.A. with 14 hours per week of support in the general education setting for lunch, recess, specials, science, and social studies; 16.5 hours per week of self-contained instruction for English, Math, Comprehensive Intervention, and Resource; one 45-minute session per week of speech/language services; and one 30-minute session per week of Occupational Therapy.

40.     The parents and Mr. Weinfeld strongly disagreed with the school system's proposal and stressed that C.A. began his year at Burning Tree generally on the 3rd grade level in academics and ended the year on the same level.

41.    At the IEP meeting, the parents and Mr. Weinfeld emphasized that C.A. had failed to make meaningful academic progress during the 2024-2025 school year.  They pointed out that it would be inappropriate to place him in 6th grade general education science and social studies classes for the 2025-2026 school year while he was working at a 3rd grade level academically, as reflected on the present level of his IEP.

42.    On May 9, 2025, C.A.'s parents and Mr. Weinfeld submitted a response to the Prior Written Notice and Team Consideration of External Report, pointing out the errors and requesting the inclusion of more information and data showing C.A.'s lack of progress. The parents and Mr. Weinfeld also noted the incorrect statements of the MCPS psychologist in the Team Consideration of External Report.

43.    During the 2024-2025 school year, C.A. failed to achieve any of his annual IEP goals.

44.    Recognizing that C.A. required a more restrictive learning environment and that the MCPS proposed IEP and placement were not sufficient, the parents placed C.A. at the Katherine Thomas School, a full-time, Maryland approved private school, for the 2025-2026 school year.

45.    C.A.'s parents filed a Request for Mediation through the Maryland Office of Administrative Hearing seeking a referral to CIEP.

46.    On June 25, 2025, the parents agreed to withdraw the mediation request upon agreement that MCPS would schedule an IEP meeting with a representative from CIEP in attendance.  Despite numerous communications with MCPS, the meeting was never scheduled.

47.    In one last attempt to reach agreement with the school system and to provide C.A. with an appropriate education, the parents attended an IEP meeting, with Mr. Weinfeld, on August 19, 2025.

48.    The meeting was unsuccessful and MCPS maintained its proposal that C.A.'s needs could be met in the ARS program at North Bethesda Midde School pursuant to the April 2025 IEP.

49.    On September 15, 2025, the parents filed a due process complaint appealing the IEP team's decision for C.A. for the 2025-2026 school year.

50.    C.A. began the 2025-2026 school year at Katherine Thomas School.  He was placed in the 6th grade middle school Boost program.

51.    The Boost program is for students who require additional supports and more intensive programming than the average student at the Katherine Thomas School.  For example, in the Boost program, C.A. is in classes with a 3:1 student-to-staff ratio.

52.    At the Katherine Thomas School, C.A. demonstrates minimal anxiety or stress.

53.    At the Katherine Thomas School, C.A. is placed in a fully self-contained school setting for all classes including lunch and recess.

54.    C.A. adjusted well to his placement at the Katherine Thomas School.  He quickly learned the routines and began doing well in his classes, earning satisfactory grades across the board.

55.    At the Katherine Thomas School, and with the support of the Boost program, C.A. shows strong participation, completes his work, and is engaged socially with the community.

56.     A due process hearing was convened on November 6, 13, 14, and 17, 2025 and December 3 and 9, 2025, and January 6, 2026 before Judge Rachael Barnett.

57.     The parents presented expert testimony from their educational consultant, Rich Weinfeld, an expert in special education, Dr. Nicole Abera, the Director at Katherine Thomas School and an expert in special education, and Dr. Maguire Brikley, the evaluator who completed C.A.'s assessment and an expert in Psychology.  The parents also testified.

58.     The parents' experts testified that during his time in the MCPS learning center, C.A. failed to make meaningful progress and, in some cases, demonstrated academic stagnation or/or regression.

59.     Both the parents' experts and MCPS witnesses testified that during his time in the Burning Tree learning center, C.A. failed to achieve any of his goals, demonstrating minimal if any improvement in his academic skills.

60.     The parents' experts testified that C.A. requires close and nearly constant supervision and support from teachers and staff in order to make progress.

61.     The parents and their experts testified that the middle school ARS program would not provide C.A. with the type and amount of support that he requires to make meaningful progress.

62.     The parents and their experts testified that the proposal to place C.A. in the general education environment is inappropriate due to the academic demands of that setting and C.A.'s need for constant support.

63.     The parents and their experts testified that the MCPS proposal was inconsistent with Dr. Brinkley's assessment and recommendations.

64.     The ALJ issued her Decision on February 3, 2025, denying the parents all relief.

65.     The ALJ improperly concluded that MCPS offered C.A. a FAPE by proposing that C.A. attend the ARS Program at North Bethesda Middle School for the 2025-2026 school years.

66.     Without evidentiary support, the ALJ improperly concluded that given C.A.'s disabilities and lower than average IQ, he made reasonable progress at the Burning Tree learning center.

67.     The ALJ incorrectly compared the middle school ARS program with the learning center, concluding that the April 2025 IEP offered nearly identical programming for C.A. as he experienced in the Spring 2025 at the learning center.

68.     The ALJ erroneously relied upon the testimony of the school system witnesses over that of the parents' witnesses.

69.     Without a rational basis, the ALJ erroneously discredited the parents' expert, Dr. Brinkley, due to her recommendations being based on her testing, while failing to note that MCPS never evaluated C.A. psychologically, although committing to do so.

70.     The ALJ erroneously concluded that because C.A. never participated in the ARS program, the school system was somehow unable to evaluate its appropriateness and that if he required more support, MCPS could amend the IEP.

71.     The ALJ failed to acknowledge that parents are required to make a decision whether to accept a proposal at the time it is made and not based on the potential for future amendment of the IEP.

72.     The ALJ's Decision contains multiple errors of fact and law.

73.     The ALJ's decision ignores significant evidence.

74.     The ALJ's findings of fact often are not regularly made.

75.     The ALJ applied incorrect legal standards in reaching his Decision.

76.     Plaintiffs are aggrieved by the ALJ's Decision.

77.     Plaintiffs have exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

78.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 77.

79.     Defendant's failure to provide C.A. with a free appropriate public education violates plaintiffs' rights under the IDEA and Maryland law.

## COUNT II

(Failure to Offer an Appropriate Program and Placement)

80.      Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 79.

81.     The failure of the ALJ to order defendant to place and fund C.A. in an appropriate program and placement violates the IDEA and Maryland law.

## COUNT III

(Failure of the Administrative Law Judge to Render a Proper Decision)

82.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 81.

83.     The ALJ committed error and violated plaintiffs' due process rights under the IDEA and Maryland law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

84.     The ALJ committed error and violated the plaintiffs' due process rights under the

IDEA and Maryland law by failing to apply correct legal standards.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1.     Issue judgment for plaintiffs and against defendant;
2.     Issue declaratory relief that defendant violated plaintiffs' rights under applicable law;
3.     Issue injunctive relief, vacating the Decision of the Administrative Law Judge and ordering defendant to reimburse plaintiffs for the tuition expenses and costs incurred in enrolling C.A. at the Katherine Thomas School 2025-2026 school year;
4.     Order defendant to place and fund C.A. at the Katherine Thomas School and declare it to be his current educational placement under the IDEA;
5.     Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and
6.     Award any other relief that this Court deems just.

Respectfully Submitted,

_____/s/_____

Paula A. Rosenstock   #09798
Michael J. Eig          #07718
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Paula.Rosenstock@lawforchildren.com

Counsel for Plaintiffs

14